OPINION. MuRdock, Judge: The Commissioner has refused to recognize the petitioner’s mother and aunt as bona fide partners for income tax purposes and has taxed to the petitioner the shares of the income of the business which the agreement of July 6, 1943, allocates to those two women. Both parties rely upon Commissioner v. Culbertson, 337 U. S. 733, and particularly the part where the Court said: The question is * * * whether, considering all the facts — the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true, intent — the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. All of the facts in the present case have been carefully considered in an effort to determine whether the parties in good faith and acting with a business purpose intended to join together in the present con-duct of the enterprise, and from that study the conclusion has been reached that they did not so intend in so far as concerns the participation of the mother and the aunt of the petitioner. ■ The petitioner realized that tax benefits would flow to her if a part of the income of the business could be taxed to her mother and her aunt, but she says that that motive was not the one which caused her to act- She said she was moved by a desire to give her mother and her aunt something which might support them in case she should die and also she did not want them to feel that they were the objects of her charity while she was taking care of them. The purpose of her reacquisition of her aunt’s share is not explained. Nevertheless, it may be assumed that her motives throughout were of the best. Still it does not follow that there was any real intent to carry on the business as partners with these two elderly ladies. The petitioner described her mother as follows: Site was just a woman that had a very teen mind, but she was elderly, of course, and after my brother had died she was shocked. She had the shock of losing two sons in a very short while, but she wasn’t exactly in failing health. I would say that she had a very good mind. She was elderly, of course. Emily was then about 74 years of age and she died within a year. There was some question as to whether Blanche was physically able to testify or to submit to the taking of her deposition. She was not called and her deposition was not taken. The petitioner gave the following testimony in regard to her, while explaining why the aunt’s withdrawals were placed in the petitioner’s account: Well, Auntie is a very old lady and she has never had any kind of experience, she has never had any cheeking account, and she asked me if I wouldn’t hold the money for her so she could have it when she wanted it and she needed it. She felt that I should take care of things for her. She later testified that she transacted everything for her Aunt Blanche and in that connection said: Well, I have to explain Auntie to really answer that question. She is just a little old lady, and she is very, very nervous, and she hasn’t ever had any dealings with money and income taxes, and things like that. She didn’t understand anything about it. So I would have to explain to her that you have to pay something out of this money, and then I would show her. Later, referring to the fact that Blanche could not draw, on the petitioner’s bank account, the petitioner said: She wouldn’t have wanted to. She wouldn’t know how to. She wouldn’t have understood. She had never drawn a check in her life. She lived with my father and mother from the time she was a little girl. These two old ladies were the petitioner’s mother and her aunt. They were her dependents and she was supporting them. They had no abilities whatsoever to contribute to the business and they had no capital except as the petitioner gave them some. It does not appear that they were able to exercise any actual control of the income of the business to which they might be entitled. Actually, the income from the business was used to pay their doctor’s bills, nurse’s bills, bills for clothing, and otherwise to maintain and support them. While that use of the money was natural enough, nevertheless, the fact is that it was the same use to which the petitioner would have put her own money in any event. These two frail- old ladies had neither the ability nor the strength to participate to any extent in the conduct of the business and they did not participate. Instead, the petitioner assumed all of the responsibilities of the ownership of the business. She described herself on her returns as an executive. She had had some experience in this business although her business experience prior to the death of her husband was limited. She hired a manager, who was paid, apparently, by the partnership. She gave the business all of the supervision and control which was furnished by the owners. The findings of fact contain other facts which have been carefully considered in arriving at the ultimate conclusion that the old ladies were not real partners in the business and the Commissioner did not err in taxing 6%8 of the income of this business to the petitioner throughout the period here involved. The petitioner also contends that the Commissioner erred by including her distributable share of the income of the business for the entire calendar year 1945 in her income for that year, since the only partnership tax period ending within the calendar year 1945 was the period which ended on July 2, 1945, when she reacquired her aunt’s interest. She and Wagner then entered into a new partnership agreement and, she argues, the first taxable period of a new partnership began on July 2, 1945, that new partnership rightfully chose to use a fiscal year ending March 31, 1946, and no part of the income for that period can be included in her income for 1945. Sec. 188. The acts which the petitioner performed in an effort to divide her interest in the business among herself, her mother, and her aunt were held ineffective for income tax purposes under the first issue. Thus, the mere fact that she reacquired in her own name on July 2, 1945, the interest standing in the name of her aunt would not terminate the period (calendar year) which the recognized and continuing partnership between the petitioner and Wagner was using for income tax purposes. There was no substantial change in the partnership relations between Wagner and the petitioner on July 2,1945. The agreement which they entered into at that time was not substantially different from the one which had been entered into on April 1, 1941, or from the one entered into on July 6,1943, bearing in mind that in the latter agreement, as in the other two, the petitioner is regarded as having a 63/68 interest. The case of Rose Mary Hash, 4 T. C. 878, affirmed on other grounds, 152 Fed. (2d) 722, certiorari denied, 328 U. S. 838, is distinguishable because in that case a new separate and distinct partnership was created, with a right to select its own fiscal year. The petitioner argues further that Wagner was a minor on June 30, 1941, when he received his %8 interest in the business from his sister, he formed a legally binding partnership with the petitioner for the first time on July 2, 1945, and, therefore, that new partnership had a right to select its own accounting period. The petitioner and Joan Wagner entered into a partnership agreement on April 1, 1941, and shortly thereafter Joan assigned her interest to her brother. The petitioner knew of that transfer and accepted the arrangement. Wagner was still a minor on July 6,1943, when he entered into the agreement of that date. However, after he became of age on July 4, 1944, he continued to receive and accept %8 of the income of the business during the remainder of 1944 and during the first half of 1945. The Commissioner has always recognized the partnership between the petitioner and Wagner for tax purposes. The arrangement, so far as the petitioner and Wagner were concerned, was no different after July 2, 1945, from what it had been prior thereto. The agreement of July 2, 1945, was not entered into because Wagner was then of age, whereas he had been a minor when he signed the previous agreement, but was entered into because the petitioner had just reacquired in her own name the interest which she previously had put in her aunt’s name. In other words, the agreement of July 2, 1945, was not for the purpose of having Wagner ratify the partnership arrangement, if ratification by him was necessary for tax purposes. He was apparently satisfied with the arrangement when he became of age on July 4,1944, and at all times thereafter, and if any ratification was necessary he gave it by accepting the benefits which came to him under the partnership agreement. Decision will be entered for the respondent.